UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**EUGENE F. LAABS,**

        **Plaintiff,**

        v.                             Case No. 10-C-1050

**MICHAEL J. ASTRUE,**

        **Defendant.**

---

# DECISION AND ORDER REVERSING AND REMANDING THE DECISION OF THE COMMISSIONER

---

**I. HISTORY**

Eugene F. Laabs ("Laabs") sought medical attention in January of 2007 after he began experiencing numbness in his extremities and pain in his back, particularly his neck. (Docket No. 13 at 1.) An MRI on January 31, 2007 revealed "[d]egenerative disc disease and some mild facet arthritis at C5-6 causing mild to moderate bilateral neuroforaminal encroachment, slightly greater on the right." (Tr. 182.) Laabs attempted to return to work as a forklift driver, but his pain returned. (Tr. 200.) He received steroid injections, (Tr. 200-02), and in the summer of 2007, Laabs' medical providers cleared him to return to work, initially for 6 hours per day, then 8 hours per day, and finally up to 12 hours per day at regular duty. (Tr. 212-219.)

But by October of 2007, Laabs' physician characterized him as "totally incapacitated," (Tr. 230), and about a month later Laabs underwent surgery about a month later aimed at addressing his back pain. Shortly after his back surgery Laabs reported that he had no further neck pain or headaches but he did still have pain and weakness in his left shoulder and numbness and tingling in

his other extremities, although these symptoms had improved with surgery. (Tr. 223.) He described his pain as being under good control and stated he was taking four Percocet per day. (Tr. 223.) By February of 2008 Laabs reported that the surgery had brought substantial improvement of his neck pain although he continued to experience some stiffness, pain, and soreness in his back. (Tr. 253.) However, he no longer suffered from any weakness or numbness. (Tr. 253.)

Laabs attempted to work in November of 2008 as a delivery driver. (Tr. 39.) Although the employer was aware of his limitations and allowed him to stop and stretch every hour, this work lasted only about a month and a half. (Tr. 39.) Laabs also tried to work as a telemarketer but lasted only two days because of the pain he suffered from sitting in a chair for four hours at a time. (Tr. 39.)

Laabs filed a claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") on October 24, 2007 alleging an onset date of January 1, 2007. (Docket No. 13 at 1.) His claim was denied initially on January 18, 2008 and upon reconsideration on February 19, 2008. (Docket No. 13 at 1.) A hearing was held before an administrative law judge ("ALJ") on August 11, 2009 where Laabs appeared with counsel. (Docket No. 13 at 1.) Also testifying at this hearing were Laabs' neighbor and a vocational expert ("VE").

The ALJ denied Laabs' claim on September 23, 2009 and the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied review on September 21, 2010. (Docket No. 13 at 1.) Plaintiff filed this action on November 23, 2010. (Docket No. 1.) All parties have consented to the full jurisdiction of a magistrate judge, (Docket Nos. 6, 9), and this matter is now ready for resolution.

**II. STANDARD OF REVIEW: SUBSTANTIAL EVIDENCE**

In addressing the issues raised by the claimant, the court is limited to determining whether the ALJ's factual findings are supported by "substantial evidence." Young v. Barnhart, 362 F.3d

995, 1001 (7th Cir. 2004). The court may not re-weigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute its own judgment for that of the Commissioner. Id.; Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).

The substantial evidence burden is satisfied when the evidence is such that a reasonable mind might accept it as adequate to support a conclusion. Williams v. Apfel, 179 F.3d 1066, 1071 (7th Cir. 1999). Although a mere scintilla of proof will not suffice, Butera v. Apfel, 173 F.3d 1049, 1055 (7th Cir. 1999), substantial evidence may be something less than the greater weight or preponderance of the evidence, Young v. Sullivan, 957 F.2d 386, 388 (7th Cir. 1992). If the ALJ rejects uncontradicted evidence, reasoning for that rejection must be clearly articulated. Id.; Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). If the ALJ's decision rests on the credibility determination, this court will overturn that determination only if it is patently wrong. Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000). Special deference is appropriate because the ALJ is in the best position to see and hear the witness and to determine credibility. Id. at 435.

When the Commissioner denies social security benefits, the ALJ is required to "build an accurate and logical bridge from the evidence to [his] conclusions" so that a reviewing court may afford the claimant meaningful review of the SSA's "ultimate findings." Blakes v. Barnhart, 331 F.3d 565, 569 (7th Cir. 2003) (citing Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir. 2002)); Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002). Further, the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." Steele, 290 F.3d at 940. Finally, if the ALJ committed an error of law, this court may reverse the Commissioner's decision, regardless of whether it is supported by substantial evidence. Pugh v. Bowen, 870 F.2d 1271, 1274 (7th Cir. 1989).

Simply stated, this court's role is not to look at all the evidence again and make an independent determination of whether the claimant is disabled. This court's role is very limited. If

the ALJ complied with the rules and regulations and the decision is supported by substantial evidence, the court must affirm that decision, despite the claimant's strong disagreement.

**III. DETERMINING DISABILITY: A FIVE-STEP ANALYSIS**

A person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In determining whether the claimant was disabled, the ALJ applied the following five step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairments equates to one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appx. 1 ("Appendix 1"); (4) whether the claimant is unable to perform past relevant work; and (5) whether the claimant is incapable of performing work in the national economy. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920; Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step, or on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, ends the inquiry and leads to a determination that a claimant is not disabled. Zurowski v. Halter, 245 F.3d 881, 885-86 (7th Cir. 2001) (citing Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985)). The claimant bears the burden of proof in the first four steps. Young v. Secretary of Health & Human Servs., 957 F.2d 386, 389 (7th Cir. 1992). If the claimant sustains that burden, at Step 5, the burden shifts to the Commissioner. Id. The ALJ is required to carefully consider and explain in his or her decision the weight given to the opinions of state agency doctors and consultants. SSR 96-6p.

**IV. ANALYSIS**

Laabs contends that the ALJ committed errors in three broad aspects of her decision: the ALJ failed to comply with SSR 96-8p in assessing Laabs' residual functional capacity ("RFC"),

4

failed to comply with SSR 96-7p when assessing Laabs' credibility, and the Commissioner failed to meet his burden at Step Five. The court shall address each of the plaintiff's contentions below.

### A. Residual Functional Capacity

The ALJ determined that Laabs retained the RFC for light work with no repetitive flexion/extension of the head/neck at end ranges of motion and no reaching at or above shoulder level. (Tr. 12.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b); 20 C.F.R. § 416.967(b). "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10; Zurawski v. Halter, 245 F.3d 881, 886 (7th Cir. 2001).

The plaintiff contends that the ALJ erred because she did not engage in a "function-by-function" assessment of Laabs' exertional and non-exertional capacities as is required by SSR 96-8p. (Docket No. 13 at 13.) Specifically, the plaintiff contends that the ALJ failed to specify how long Laabs could sit, stand, or walk. (Tr. 13 at 13-14.) Moreover, Laabs contends it is unclear whether the ALJ considered certain evidence, (Docket No. 13 at 14-16), and she failed to appropriately consider an assessment by a physical therapist, (Docket No. 13 at 16-18).

The Commissioner responds that the ALJ appropriately assessed Laabs' RFC, including the assessment by the physical therapist, and a "function-by-function" assessment is not required. (Docket No. 14 at 16-18 (quoting Knox v. Astrue, 327 Fed. Appx. 652, 657 (7th Cir. 2009) (unpublished).)

5

"RFC is what an individual can still do despite his or her limitations." SSR 96-8p. It reflects the maximum that an individual is capable of doing on a regular and continuing basis. Id. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Id. When assessing an individual's ability to do a full range of work at a particular exertional level, it is necessary to assess the individual's capacity to perform each element of work at that exertional level. Id. "Although the 'RFC assessment is a function-by-function assessment,' SSR 96-8p, the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." Knox, 327 Fed. Appx. at 657.

In support of her RFC determination, the ALJ found reports of Laabs' treating physician's contained in Exhibits 3F, 4F, and 6F, along with the report by DDS in Exhibit 5F to be "fully credible." (Tr. 12.) The ALJ noted that in July 2007, Laabs' physicians cleared him to return to work for up to 12 hours per day at regular duty and following Laabs' back surgery, in February 2008, Laabs reported no weakness or neurological deficits. (Tr. 12.) Although Laabs later reported to his physical therapist that he suffered certain limitations, the ALJ afforded little weight to the therapist's findings because they were based upon the therapist's subjective assessment and were not verified by a physician. (Tr. 12.)

Unfortunately, the ALJ's conclusory approach, which fails to adequately articulate the basis for her assessment of certain medical evidence, prevents this court the opportunity to afford the claimant meaningful review of her decision. The ALJ's attempt to support her RFC conclusion through the conclusory finding that Exhibits 3F, 4F, 5F, and 6F, are "fully credible" is insufficient because the record is not consistent. For example, physician notes indicate that Laabs would be able to return to full regular duty for up to 12 hours per day as of July 2, 2007, (Tr. 217), but then on August 24, 2007, activity restrictions are imposed. (Tr. 215). In these 60 pages of records spanning

6

the periods both before and after Laabs surgery, there are also statements which would tend to support a finding of disability. One example is the October 4, 2007, notation of Dr. Sumon Bhattacharjee who described Laabs as "totally incapacitated at this time." (Tr. 230.) Having found this finding to be "fully credible," why did the ALJ apparently disregard it? Her decision does not contain any explanation.

Furthermore, aside from perhaps finding that Laabs would be required to shift from sitting to standing at will, (see Tr. 14-15), the ALJ's decision is devoid of any explicit findings regarding Laabs' ability to perform the elements of light work. At no point did the ALJ make findings suggesting that Laabs is capable of "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," or frequently lifting or carrying up to 10 pounds. The Seventh Circuit's unpublished decision in Knox does not hold that a function-by-function assessment is not required; SSR 96-8p is clear that such an assessment is required. Rather, the Seventh Circuit in Knox recognized that there may be multiple ways to comply with the mandate contained in SSR 96-8p, such as using a narrative format rather than, for example, a list where each element is followed by an explicit finding.

Finally, in making her RFC determination, the ALJ quickly dismissed the assessment of Laabs' physical therapist because "the proposed limitations were those subjectively 'tolerated' by the claimant, and not necessarily verified by a physician." (Tr. 12.) Although not an "acceptable medical source," the opinion of a physical therapist cannot be simply disregarded. SSR 06-3p. To the contrary, particularly when it comes to chronic conditions, the Seventh Circuit has recognized physical therapists as having "significant expertise," that may be particularly valuable in an assessment of a claimant's limitations in that a physical therapist's determinations are often made based upon physical tests and observations rather than the claimant's subjective complaints. Barrett v. Barnhart, 355 F.3d 1065, 1067-68 (7th Cir. 2004). Thus, under certain circumstances, the opinion of someone who is not an

7

acceptable medical source, like a physical therapist, might be afforded greater weight than that of an acceptable medical source, even a treating source. SSR 06-3p.

Medical determinations, including those the ALJ relied upon in reaching her decision, frequently contain an element of subjectivity, and thus this fact is surely an insufficient basis to wholly disregard a medical opinion. Likewise, without more, simply because a physical therapist's conclusions have not been verified by a physician is not a sufficient reason to disregard that opinion. As SSR 06-3p notes, it might be possible for a physical therapist's opinion to be credited even when directly contradicted by that of a treating physician. Thus, the court concludes that the ALJ's conclusory dismissal of the physical therapist's opinion was improper.

Accordingly, for the foregoing reasons, the matter must be remanded for an appropriate evaluation and articulation of Laabs' RFC.

### B. Credibility

An ALJ's credibility determination will not be upset unless it is "patently wrong," Barnett v. Barnhart, 381 F.3d 664, 670 (7th Cir. 2004) (citing Jens v. Barnhart, 347 F.3d 209, 213 (7th Cir. 2003)), or "divorced from the facts contained in the record." Berger v. Astrue, 516 F.3d 539, 546 (7th Cir. 2008).

An ALJ must comply with SSR 96-7p when evaluating credibility. Lopez v. Barnhart, 336 F.3d 535, 539-40 (7th Cir. 2003); Brindisi v. Barnhart, 315 F.3d 783, 787 (7th Cir. 2003). SSR 96-7p requires that an ALJ carefully evaluate the "intensity, persistence, and functionally limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 96-7p. Further, an ALJ's evaluation of the claimant's credibility must contain "specific reasons" and "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicatory gave to the individual's statements and the reasons for that weight." SSR 96-7p.

In making a credibility determination, an ALJ "may not disregard subjective complaints merely because they are not fully supported by objective medical evidence." Blom v. Barnhart, 363 F. Supp. 2d 1041, 1051 (E.D. Wis. 2005) (quoting Knight v. Chater, 55 F.3d 309, 314 (7th Cir. 1995). Rather, SSR 96-7p requires an ALJ to consider the following factors ("SSR factors"): (1) the claimant's daily activities, (2) the location, duration, frequency and intensity of the pain, (3) precipitating and aggravating factors, (4) type, dosage, effectiveness and side effects of medication, (5) treatment other than medication, (6) any measures the claimant has used to relieve the pain or other symptoms, and (7) functional limitations and restrictions. SSR 96-7p; 20 C.F.R. § 404.1529(c)(3).

Laabs contends that the ALJ's credibility determination was patently wrong when the ALJ interpreted Laabs' neighbor's testimony that he "helped" Laabs with cutting the grass, snow blowing, and carrying groceries as suggesting that Laabs also participated in these activities. (Docket No. 13 at 19-20.) Laabs also argues that the ALJ inappropriately utilized the fact that Laabs had an unsuccessful work attempt as evidence that Laabs believed that he was capable of fulltime work. (Docket No. 13 at 20.) Finally, in Laabs' view, the ALJ placed inappropriate weight upon the fact that Laabs reported that over-the-counter pain relievers lessened his pain while failing to consider why Laabs was not taking the pain relievers he was prescribed. (Docket No. 13 at 20.)

The Commissioner responds that the ALJ reasonably interpreted the neighbor's testimony, appropriately considered the significance of Laabs' prior work attempt, and otherwise provided appropriate reasons for her credibility determination.

At the hearing before the ALJ, Laabs' neighbor testified as follows in response to questions posed by the Laabs' attorney:

> Q    Okay. Now it's my understanding that you have to do a lot to help Gene to get through his daily activities. What types of things do you do for Gene?

| | | |
|---|---|---|
| A | | Cut the grass, snow blow, you know. Help him out with the groceries of you know, basic stuff. |
| Q | | Okay. When is the last time you saw Gene cut the grass or do any snow-blowing on his own? |
| A | | On his own? |
| Q | | Yeah. |
| A | | I really don't recall. I mean every since I've known him, I kind of you know, asked him if he needed help and all that kind of stuff. |
| Q | | Okay. So you don't even remember the last time he's done that himself? |
| A | | No. |
| Q | | Okay. And you help him with the groceries? |
| A | | Oh yeah. |

(Tr. 50-51.)

The ALJ apparently understood the neighbor's testimony that he "helped" Laabs with mowing the lawn and snow blowing as meaning that Laabs did these activities with the assistance of his neighbor. Based upon the entire context of the neighbor's testimony, the court concludes that this is a patently wrong interpretation of the neighbor's testimony.

Although certain passages are arguably ambiguous if viewed in isolation, when evaluated in the context of the neighbor's entire testimony, it becomes clear that the neighbor was never suggesting that Laabs ever mowed the lawn or would snow blow, even with his neighbor's assistance. Rather, the neighbor testified that he helped Laabs by moving the lawn and snow blowing for him.

Laabs' neighbor spoke of how he must check up on Laabs daily because if Laabs sits in a chair too long, Laabs will be unable to get up. (Tr. 51-52.) He testified that when he went fishing with Laabs, he had to pick Laabs up to get him out of the boat and help Laabs into the neighbor's truck. (Tr. 52.) The only activity that the neighbor indicated that Laabs did along with him was

10

dealing with groceries, in which case Laabs' assistance was generally limited to holding the door. (Tr. 51.) Thus, the court concludes that the ALJ erred when she concluded that Laabs would mow the lawn and snow blow and utilized these findings as factors in concluding that Laabs' subjective complaints were not as severe as he alleged. Absent these essential pieces to the ALJ's credibility determination, the court concludes that it cannot stand and thus, upon remand the ALJ must reassess Laabs' credibility.

Upon remand, the ALJ must also reassess the significance of Laabs' prior work attempt. SSR 96-7p explicitly instructs an ALJ to consider "efforts to work" as a factor in assessing a claimant's credibility. Thus, an unsuccessful work attempt, like evidence of any other activity, is relevant to a credibility determination. Stich v. Astrue, 2010 U.S. Dist. LEXIS 7541 (E.D. Wis. Jan. 31, 2010); but see Meeker v. Astrue, 2010 U.S. Dist. LEXIS 662 (E.D. Wash. Jan. 5, 2010) ("[P]laintiff's unsuccessful work attempt should not be a factor in the credibility determination and were improperly considered by the ALJ." (footnote omitted)). However, an ALJ must be cautious so as to not place too great of weight upon an unsuccessful work attempt. Lingenfelter v. Astrue, 504 F.3d 1028, 1039-40 (9th Cir. 2007) (holding that an unsuccessful work attempt, standing alone, is insufficient to find that claimant was not credible).

> It does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed*, that he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment. Indeed, we have suggested that similar evidence that a claimant tried to work and failed actually *supported* his allegations of disabling pain.

Id. at 1038 (emphasis in original).

Most especially, an ALJ must be ever mindful of the fact that the work attempt proved unsuccessful and avoid effectively punishing a claimant for taking the admirable step of attempting to work despite his claim for disability benefits. A claimant might attempt to work for a variety of reasons, such as personal pride or desperation, other than out of a belief that he is capable of

11

sustained work. See Barnett v. Barnhart, 381 F.3d 664, 669 (7th Cir. 2004) (citing Henderson v. Barnhart, 349 F.3d 434, 435 (7th Cir. 2003); Wilder v. Apfel, 153 F.3d 799, 801 (7th Cir. 1998). Therefore, if upon remand the ALJ determines that Laabs' unsuccessful work attempt remains relevant to her credibility assessment, she must provide greater support for her conclusion other than merely baldly stating that the unsuccessful work attempt is "evidence of his belief that he was capable of performing substantial gainful activity." (Tr. 13.)

Finally, the ALJ stated, "The claimant's credibility is further undermined by his admission that his pain level is diminished with over-the-counter medication, 2 Ibuprofen, 3 times a day." (Tr. 13.) The ALJ offered no explanation as to how the plaintiff's testimony undermined Laabs' credibility. In the absence of any explanation for the ALJ's determination, the court finds the fact that Laabs received some relief from over-the-counter pain relievers to be a fact largely irrelevant to his credibility determination. One would expect most individuals, whether disabled or not, to receive some sort of relief from an over-the-counter pain reliever. In Laabs' case, he testified these pain relievers reduced his pain from a level of 9 or 10 down to a level of 7, (Tr. 45-46); he did not testify that he was able to eliminate his pain. Therefore, should the ALJ determine on remand that Laabs' use of over-the-counter pain medications is an appropriate factor to consider in assessing Laabs' credibility, the ALJ must offer additional explanation sufficient to enable a reviewing court to understand the basis for her conclusion.

**C. Step Five**

Laabs contends that "there is a conflict as to whether the ALJ meant the Plaintiff could perform unskilled or semi-skilled work," and the VE's "testimony is not consistent with the ALJ's RFC." (Docket No. 13 at 24-25.) The court, like the Commissioner, (see Docket No. 14 at 21), is not clear as to the basis for the plaintiff's argument.

Having reviewed the transcript of the VE's testimony, (Tr. 55-57), the ALJ's decision, (Tr. 14-15), and the parties' briefs, the court finds no error with respect the ALJ's Step Five determination. Although the ALJ did not include the requirement that Laabs be able to shift at will from sitting to stranding in her RFC determination, (Tr. 12), it was included in the hypotheticals presented to the VE, (Tr. 56-57), and discussed in her decision. (Tr. 15). Thus, the court finds no error in the hypothetical presented to the VE or this aspect of the ALJ's RFC determination. The ALJ presented a hypothetical to the VE that included all the limitations she found in her RFC determination but added an additional limitation and nonetheless the VE determined that Laabs was capable of work. Of course, on remand, if there is any change in the RFC determination, it may necessitate reconsideration at Step Five.

**V. CONCLUSION**

The court concludes that the ALJ erred in determining Laabs' RFC. She failed to comply with SSR 96-8p and provide a function-by-function assessment of Laabs' ability to engage in light work; failed to adequately articulate why, despite referring to them as "fully credible" she was not crediting certain opinions by Laabs' treating sources; and finally, failed to provide an adequate explanation for her decision to disregard the assessment of Laabs' physical therapist.

The court also finds that the ALJ erred in her credibility determination when she plainly misinterpreted the testimony of Laabs' neighbor. The ALJ also failed adequately explain the basis for her conclusion that Laabs' use of over-the-counter pain relievers undermined his credibility.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **reversed** and this matter **remanded** for further proceedings in accordance with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 25th day of May, 2011.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge